UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MIKKI BUCKELEW WIMBS,            )
                                 )
      Plaintiff,                )
                                 )
vs.                              )  Case No.  5:24-cv-01363-HNJ
                                 )
SOCIAL SECURITY                  )
ADMINISTRATION, COMMISSIONER,    )
                                 )
      Defendant.                )

## MEMORANDUM OPINION

Plaintiff Mikki Wimbs seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability, disability insurance, and supplemental security income benefits. The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 11).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. *Id.* at §§ 404.1520(d), 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.").

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* §§

3

404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. . . . Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103 (citations omitted). Therefore, substantial evidence exists even if the evidence

4

preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

On June 20 and July 12, 2021, Wimbs filed applications for a period of disability, disability insurance, and supplemental security income benefits, alleging disability as of June 6, 2021. (Tr. 259-69, 273-83). On March 22, 2022, the Commissioner denied Wimbs's claims. (Tr. 128-41). On April 13, 2022, Wimbs requested reconsideration of the Commissioner's decision. (Tr. 142-48). The Commissioner reviewed Wimbs's claim yet, on April 11, 2023, the Commissioner determined the previous denials were proper under the law. (Tr. 150-64). On April 26, 2023, Wimbs filed a request for a hearing. (Tr. 165-71). On October 30, 2023, the ALJ held a hearing. (Tr. 33-76). On January 11, 2024, the ALJ issued an opinion denying Wimbs's claims. (Tr. 7-26).

Applying the five-step sequential process, the ALJ found at step one that Wimbs did not engage in substantial gainful activity after June 6, 2021, her alleged disability onset date. (Tr. 13). At step two, the ALJ found Wimbs manifested the severe impairments of degenerative disc disease of the cervical spine with herniated disc and spinal stenosis, and degenerative disc disease of the lumbar spine. (Tr. 14). At step three, the ALJ found Wimbs's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17).

Next, the ALJ found Wimbs exhibited the residual functional capacity ("RFC")

5

to perform light work, with the following additional limitations:

> claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk with normal breaks for 6 hours in an 8-hour workday and sit with normal breaks for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. She can frequently balance on even terrain and surfaces. She can occasionally stoop. She can frequently kneel and crouch. She can never crawl. She can tolerate occasional exposure to extreme cold. She should avoid all exposure to unprotected heights and hazardous moving machinery.

(Tr. 18).

At step four, the ALJ determined Wimbs retained the ability to perform her past relevant work as a general inspector, bartender, and sales clerk. (Tr. 25). Accordingly, the ALJ determined Wimbs has not suffered a disability, as defined by the Social Security Act, since June 6, 2021. (*Id.*).

Wimbs filed a request for review of the ALJ's opinion before the Appeals Council. (Tr. 257-58). On August 9, 2024, the Appeals Council denied Wimbs's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Wimbs filed her complaint with this court on October 7, 2024. (Doc. 1).

## ANALYSIS

In this appeal, Wimbs argues the ALJ improperly evaluated the medical opinion of CRNP Adrianne Crane. For the reasons discussed below, the undersigned concludes Wimbs's contention does not warrant reversal.

Social Security regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must apply the same factors in the consideration of all medical opinions and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinion. *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations. *Id.* §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5). The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file. *Id.* §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but

7

not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(c)(5), 416.920c(c)(5).

Crane conducted a consultative examination on February 26, 2022. (Tr. 571-77). Wimbs reported sustaining a neck injury at work in April 2021, for which she received chiropractic treatment.[2] A May 2021 x-ray exhibited mild disc narrowing at C4-C5, and severe disc narrowing at C5-C6 and C6-C7, with foraminal encroachment at C6-C7 bilaterally and reversed cervical curve. A subsequent MRI "showed multilevel disc disease with multiple levels with mild to slight disc herniation and varied degrees of neural foramen narrowing." (Tr. 572). Wimbs reported pain in her neck, and numbness, tingling, and burning in her bilateral upper extremities. She also reported pain radiating down her medial leg which causes her to stumble and sometimes fall. She fell multiple times during the year leading up to the examination. (*Id.*).

Wimbs reported she cannot sit for prolonged periods of time due to hip pain; she cannot stand for long periods of time due to lower back and hip pain; and she cannot walk long distances due to unsteady gait with frequent stumbles and falls. Her daily activities included preparing simple meals and caring for herself, though she experiences difficulty donning a bra and shirts due to back and neck pain. She performs

---

[2] Wimbs also described mental health symptoms, but Crane did not assess Wimbs's mental health limitations. (*See* Tr. 577 (noting Wimbs "has mental health issues, including anxiety and depression, that are being evaluated by other providers")).

housekeeping and laundry tasks independently, though she requires frequent breaks while performing these activities. Her friend does most of the shopping. She can drive independently, but she chooses not to drive often due to frequent accidents and fear. (*Id.*).

During the physical examination, Wimbs appeared well-groomed, alert, fully oriented, and in no acute distress. She demonstrated no paraspinal muscle tenderness, and she had a negative straight leg raise test. She demonstrated full muscle strength in her right and left lower extremities, 4/5 muscle strength in her right and left upper extremities, and 4/5 grip strength. She could pinch, grab, and manipulate objects; fully extend her hand; make a fist; and oppose her fingers. She displayed normal reflexes. She used the rails of a chair to assist her in rising from the examination table, yet she displayed no difficulty walking on heals or toes, squatting, rising, or moving her finger to her nose. She displayed normal gait, and she did not use an assistive device to ambulate. She experienced decreased range of motion in the cervical spine, lumbar spine, and shoulder, yet she experienced full range of motion in the elbow, wrist, hand, hip, knee, ankle, and great toe. (Tr. 572-76).

Crane assessed Wimbs with frequent falls, acute dyspnea, anxiety, depression, neural foraminal narrowing, broken neck, degenerative disc disease, spinal stenosis, sciatica, herniated discs, and pinched nerves. (Tr. 576). She imposed the following restrictions:

> The claimant has limitations with sitting and standing. She can sit

9

>and stand frequently, although [she] requires frequent position changes and rest periods within the duration of time performing these activities due to lower back pain.
>
>The claimant has limitations in walking. She can perform this action occasionally. The claimant requires frequent rest periods within the duration of time performing this activity due to lower back pain, stumbling, and frequent falls.
>
>The claimant has limitations in lifting and carrying. She can lift and carry 10 pounds on both sides occasionally. The claimant can lift and carry items for short periods of time with adequate rest periods. The claimant has difficulty with lifting and carrying items due to lower back pain, stumbling, and frequent falls. Weakness to upper extremities with burning, numbness, and tingling causes her to drop items often, posing difficulty with carrying objects for any length of time.

(Tr. 577).

The ALJ found Crane's assessment

>not persuasive because it is not consistent with or supported by the medical evidence of record, including Ms. Crane's own examination. Ms. Crane noted that the claimant had limitations with sitting, standing, and walking, which is not wholly inconsistent with the file, but noting that the claimant required frequent position changes and rest periods was not consistent with objective evidence at the examination with Ms. Crane. Similarly, the claimant was limited to only lifting and carrying 10 pounds on both sides, which was not supported by the examination notes, nor was finding that she could only do so for short periods of time and with rest periods.

(Tr. 23-24).

Wimbs argues the ALJ erred by failing to address the consistency of Crane's assessment with the other record evidence, yet the record does not support that contention. True, as Wimbs points out, the ALJ's opinion contains a more detailed explanation of the supportability factor than the consistency factor. However, even

10

though "an administrative law judge must consider supportability and consistency, [s]he need not recite 'magic words to state with particularity the weight given to medical opinions or the reasons for discounting them,'" as long as she "'states with at least some measure of clarity the grounds for . . . her decision.'" *Dubose v. Comm'r of Soc. Sec.*, No. 24-13554, 2025 WL 2529598, at *5 (11th Cir. Sept. 3, 2025) (quoting *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024)). Moreover, "an ALJ's evaluation of a medical opinion need not repeat a previously stated factual examination of a plaintiff's medical history." *Hagins v. Comm'r of Soc. Sec.*, No. 8:24-CV-02129-SPF, 2025 WL 2445569, at *4 (M.D. Fla. Aug. 26, 2025) (citing *Raper*, 89 F.4th at 1273-1275).

Here, the ALJ's opinion, considered as a whole, demonstrates the ALJ considered the consistency of Crane's assessment with other record evidence. *See Rollinger v. Comm'r of Soc. Sec.*, No. 6:23-CV-868-DCI, 2024 WL 2795810, at *3 (M.D. Fla. May 31, 2024) (the court reads the ALJ's decision as a whole to assess the adequacy of the ALJ's consistency determination (citing *Raper*, 89 F.4th at 1276; *Davis v. Comm'r of Soc. Sec.*, No. 2:10-cv-673-FtM-DNF, 2011 WL 5826553, at *1, 13 (M.D Fla. Nov. 18, 2011))).[3] The ALJ explicitly stated Crane's opinion was "not consistent with or

---

[3] Contrary to Wimbs's argument (*See* Doc. 17, at 2-3), considering the ALJ's opinion as a whole does not require impermissible *post-hoc* rationalizations. The court may not "speculate as to what [an ALJ's] statement means and the reasons behind it," if the ALJ "fails to adequately explain the reasoning behind his decision." *Ferguson v. Soc. Sec. Admin., Comm'r,* No. 4:19-cv-1393-HNJ, 2020 WL 4346772, at *8 (N.D. Ala. July 29, 2020) (citation omitted). But relying upon an explanation from a different section of an ALJ's decision does not constitute speculation; it constitutes a careful, wholistic analysis of the decision, and it comports with directives from the Eleventh Circuit and other persuasive case law. *See Hagins v. Comm'r of Soc. Sec.*, No. 8:24-CV-02129-SPF, 2025 WL 2445569, at *6 (M.D. Fla. Aug. 26, 2025) ("A court should read an ALJ's decision as a whole such that it is not improper for an ALJ

11

supported by the medical evidence of record, *including Ms. Crane's own examination.*" (Tr. 23 (emphasis added)). That phrasing indicates the ALJ compared Crane's findings with the other record evidence. The ALJ also assessed the consistency of Crane's findings with "the file," further indicating she considered other evidence. (Tr. 24).

Significantly, the ALJ relied heavily on the opinion of Dr. Gloria Sellman, the state agency medical consultant, who assessed Wimb's abilities at the initial administrative level on March 16, 2022. (Tr. 21-22). When discussing the persuasive value of Dr. Sellman's opinion, the ALJ reasoned:

> Dr. Sellman provided appropriate rationale for her opinions and noted that the consultative examination with Ms. Crane showed some reduced strength in the bilateral upper extremities and decreased range of motion in the cervical and lumbar spine, which resulted in the limitations found above. However, Dr. Sellman appropriately found that the claimant was not as limited as alleged given the lack of other evidence in the file as well as normal findings from Ms. Crane that included 5/5 strength in the bilateral lower extremities, normal gait and station, normal range of motion in the upper and lower extremities, and no assistive device used for ambulation. Overall, Dr. Sellman, who has program knowledge, rendered opinions that were consistent with the medical evidence of record and adequately discussed the medical evidence of records [*sic*] that were available at the time of her opinions.

(Tr. 22). The ALJ accurately described Dr. Sellman's assessment and accurately compared it to Crane's assessment. The ALJ's discussion of Dr. Sellman's assessment, which mirrors the ALJ's RFC finding (Tr. 18, 77-94), demonstrates that the ALJ

---

to rely upon an earlier, similar factual analysis when rendering a conclusion about a medical opinion." (citing *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1273, 1275-76 (11th Cir. 2024))); *Rollinger v. Comm'r of Soc. Sec.*, No. 6:23-CV-868-DCI, 2024 WL 2795810, at *4 (M.D. Fla. May 31, 2024) ("[T]he Court is able to evaluate the ALJ's opinion based upon a review of the decision as a whole.").

considered the consistency of Crane's assessment with the remainder of the record evidence.

Other parts of the ALJ's decision discuss medical evidence that presents inconsistencies with Crane's findings. *See Agan v. Kijakazi*, No. 4:22-CV-00368-RDP, 2023 WL 5193468, at *9 (N.D. Ala. Aug. 11, 2023) ("[W]hile the ALJ did not immediately follow her statement explaining why Dr. Nichols's opinion was unpersuasive and inconsistent, the ALJ discussed elsewhere in her decision the specific medical evidence in relation to the inconsistency of Dr. Nichols's opinion." (citing *Hutson v. Comm'r, Soc. Sec. Admin.*, No. 6:21-cv-01495, 2023 WL 2634037, at *5 (N.D. Ala. 2023))). When discussing the consistency of Wimbs's subjective complaints with the record evidence, the ALJ observed that "the medical evidence of record was fairly limited with regard to the claimant's alleged debilitating neck pain." (Tr. 19). The record supports that statement.

Wimbs received limited chiropractic treatment, and the records of that and other treatment, reflected only mildly restricted cervical range of motion. (*Id.*, Tr. 442-94, 519-34). The ALJ also observed Wimbs never sought treatment from a neurosurgeon, despite an MRI's revelation of cervical disc disease. (Tr. 19, 452, 454). She received no treatment for neck pain between June 2021 and February 2022, further reflecting her symptoms may not have manifested severely. *See Watkins v. Comm'r, Soc. Sec. Admin.*, No. 23-12765, 2025 WL 18514, at *15 (11th Cir. Jan. 2, 2025) ("'[T]he ALJ may consider the level or frequency of treatment when evaluating the severity of a claimant's

13

condition." (citing *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996))); *see also Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020) ("A conservative treatment plan tends to negate a claim of disability." (citing *Wolfe*, 86 F.3d at 1078)). The February 2022 treatment notes reflected pain, muscle spasms, and decreased range of motion in the neck, but normal findings regarding Wimbs's back and extremities. Cervical spine imaging reflected cervical spondylosis but no acute cervical osseous abnormality. (Tr. 20, 602, 605-19). Subsequently, Wimbs sought no further treatment of any kind until May 2023, when she presented to the emergency department at Cullman Regional Medical Center for lower body injuries after a fall, not for neck pain. The treatment providers assessed a muscle strain, as lumbar spine imaging revealed no acute findings. (Tr. 21, 633-55).

In addition to these treatment records, the ALJ considered the assessment of CRNP Valerie Danette Sanford, who performed a consultative examination on March 18, 2023, more than a year after Crane's assessment. Wimbs reported a history of neck injury she sustained at work in April 2021, for which she received chiropractic treatment.[4] A May 2021 x-ray revealed mild disc narrowing at C4-C5 and severe disc narrowing at C5-C6 and C6-C7, with foraminal encroachment at C6-C7 bilaterally and reversal of the cervical curve. A subsequent MRI revealed multilevel cervical disc disease with mild to slight disc herniation and varied degrees of neural foramen

---

[4] As with the Crane examination, Wimbs also reported mental health symptoms, but Sanford did not assess those.

narrowing. Wimbs reported continued pain in her neck and numbness, tingling, and burning in her bilateral upper extremities. She also reported pain that radiates down her medial leg and causes stumbles and falls. She fell multiple times during the year preceding the examination. Wimbs reported a poor sleep pattern due to pain. She experiences level 6/10 pain most days, and over-the-counter medications provide minimal relief.

Sanford assessed that Wimbs experiences difficulty sitting and must shift frequently due to pain. She experiences difficulty standing, as she develops pain after standing approximately ten minutes. She experiences difficulty walking, as she develops pain after walking approximately 100 feet. Wimbs can cook small meals, but she must sit frequently while doing so. She depends on others for personal care, housekeeping, laundry, shopping, and banking. She can drive only short distances due to pain and an inability to turn her neck.

During the physical examination, Wimbs appeared alert, fully oriented, and in no acute distress. Her back and neck showed no deformity, external skin changes, or signs of trauma. Her cervical, thoracic, and lumbar spine displayed normal curvature, and the bony features of her shoulders and hips displayed equal height bilaterally. She displayed no tenderness in the cervical, thoracic, or lumbar paraspinal muscles. She produced a negative straight leg raise test while seated and supine. She displayed no tenderness or deformity in the upper and lower extremities. She displayed full grip strength, normal reflexes, and full muscle strength in all extremities, representing an

improvement over Crane's examination. She experienced some difficulty alighting on and off the examination table, but she experienced no difficulty walking on heels and toes, squatting, rising, and moving her finger to her nose. She displayed slow, antalgic gait, but she did not use an assistive device for ambulation. She experienced reduced range of motion in the cervical spine, lumbar spine, and shoulder, yet she experienced full range of motion in the elbow, wrist, hand, hip, knee, ankle, and great toe.

Sanford assessed Wimbs with degenerative joint disease, spinal stenosis, and cervical disc disease. She opined Wimbs could not bend, stoop, or twist. She also noted Wimbs displayed antalgic gait and limited range of motion in the cervical region. (Tr. 591-97).

The ALJ found Sanford's opinion that Wimbs could not bend, stoop, or twist "not persuasive because it is not consistent with or supported by the record, including Ms. Sanford's own examination notes." (Tr. 24). The ALJ acknowledged Wimbs experienced some limited range of motion, but the record did not support a total inability to bend, stoop, or twist. Moreover, the ALJ concluded the record supported additional functional limitations beyond those Sanford imposed. (*Id.*).

Though the ALJ did not find persuasive Sanford's conclusions about Wimbs's functional abilities, Sanford's assessment nonetheless contains some findings that do not consist with Crane's assessment of the need for frequent position changes and rest periods, including no spinal deformities or tenderness; negative straight leg raise testing; full grip strength; normal reflexes; full muscle strength; no difficulty in squatting, rising,

16

or heel-toe walking; and limited range of motion only in the spine and shoulder. Sanford's findings regarding muscle strength represented an improvement over Crane's examination.

Based upon the entirety of the foregoing review, the court finds the ALJ properly considered the consistency of Crane's assessment with the record evidence, stated the reasoning for her decision with sufficient clarity, and supported her decision with substantial evidence.

Wimbs also argues the ALJ's analysis of the supportability factor "was not without error." (Doc. 12, at 16). According to Wimbs, the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion," as the ALJ did not explain her conclusion that Crane's examination notes did not support Crane's opinions. (*Id.*).

Among courts that employ the "logical bridge" analysis,[5] all agree it does not alter the substantial-evidence standard. *See Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) (clarifying that the "logical bridge" language "is descriptive but does not alter the applicable substantial-evidence standard (citing *Biestek*, 587 U.S. at 102)); *Gala v. Comm'r*

---

[5] "[T]he 'logical bridge' concept is a creation of the Seventh Circuit Court of Appeals." *Atkison v. Bisignano*, No. 24-CV-21458, 2025 WL 2760135, at *11 (S.D. Fla. Sept. 29, 2025). The Eleventh Circuit has not explicitly adopted the standard, *see id.*, and it has used the phrase in only one, unpublished opinion. In *Martin v. Comm'r, Soc. Sec. Admin.*, No. 23-13315, 2024 WL 3456224 (11th Cir. July 18, 2024), the Court found unpersuasive the claimant's argument that "the ALJ 'failed to build the requisite accurate and logical bridge from the evidence to her conclusion,'" as "the ALJ supported the nondisability finding by properly weighing the medical evidence and determining the proper weight of each medical expert's testimony based on their relative support and consistency with the record." *Id.* at *3.

*of Soc. Sec.*, No. 2:23-CV-642-JES-KCD, 2024 WL 2880417, at *4 (M.D. Fla. Apr. 3, 2024), ("A logical bridge simply means that 'an ALJ must articulate at some minimum level, her analysis of the evidence.' . . . Ultimately, this requirement does not alter the substantial evidence standard. . . ." (citing *Brumbaugh,* 850 F. App'x at 977; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001))), *report and recommendation adopted*, No. 2:23-CV-642-JES-KCD, 2024 WL 2239070 (M.D. Fla. May 17, 2024); *Broomfield v. Kijakazi*, No. 22-CV-60879, 2023 WL 6376456, at *8 n.8 (S.D. Fla. Sept. 29, 2023) ("The 'logical bridge' language does not alter the applicable substantial evidence standard, which the ALJ here has satisfied." (citing *Brumbaugh*, 850 F. App'x at 977)). Rather, "creating a logical bridge simply means that an ALJ must articulate at some minimum level, her analysis of the evidence." *Atkison v. Bisignano*, No. 24-CV-21458, 2025 WL 2760135, at *11 (S.D. Fla. Sept. 29, 2025) (cleaned up) (citing *Moore v. Kijakazi*, No. 23-CV-206, 2023 WL 8187216, at *4 (M.D. Fla. Nov. 27, 2023); *Dixon*, 270 F.3d at 1176).[6]

To the extent this court may appropriately use the "logical bridge" terminology, a logical bridge existed between the evidence and the ALJ's supportability finding, as the ALJ more than minimally articulated her analysis of the evidence. The ALJ stated Crane's assessment "is not consistent with or supported by the medical evidence of record, including Ms. Crane's own examination"; that the finding of a need for frequent position changes and rest periods "was not consistent with objective evidence at the

---

[6] Wimbs acknowledges this point in her brief. (Doc. 12, at 16-17 (citing *Chait v. Comm'r of Soc. Sec.*, No. 2:23-cv-400-KCD, 2024 WL 3534098, *8 (M.D. Fla. July 25, 2024)).

examination with Ms. Crane"; and the findings regarding lifting and carrying limitations were "not supported by the examination notes." (Tr. 23). Though the paragraph containing that statement does not contain a detailed explanation of the reasons Crane's records did not support her findings, other portions of the ALJ's opinion, as discussed above regarding consistency, support the ALJ's findings.

Wimbs contends that Crane's notation of restricted cervical, lumbar, and shoulder range of motion, and of Wimbs's need to use rails and chairs to rise from the examination table, supported Crane's findings regarding the need for position changes, rest periods, and lifting and carrying limitations, and they contradicted the ALJ's decision to reject those findings. However, the ALJ acknowledged Wimbs "had limitations with sitting, standing, and walking" (Tr. 24), and she imposed restrictions in the RFC finding to account for those limitations. (*See also* Tr. 19 ("While the record supports some of [Wimbs's] subjective complaints, the undersigned has adequately accounted for these complaints in light of the objective evidence."), 21 ("[T]he record supports some degree of limitation as evidenced above."), 25 ("[T]he above residual functional capacity assessment is supported by careful consideration of the combination of impairments, which result in some limitation, but do not prevent the claimant from performing a limited range of light work as defined above.")). Wimbs cannot successfully challenge the ALJ's decision simply by arguing the ALJ should have interpreted the evidence differently. *See Moore*, 405 F.3d at 1213 (quoting *Bloodsworth,* 703 F.2d at 1239) ("To the extent that Moore points to other evidence

19

which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against' the decision.") (alterations in original).

In summary, the ALJ properly considered the functional assessment from CRNP Adrianne Crane, and substantial evidence supported the ALJ's decision. The ALJ did not err.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 13th day of March, 2026.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE